DOROTHY CANN, Plaintiff, v. ROBERT N. CANN, Defendant.

Supreme Court, Special Term, New York County, January 7, 1954.

*Cora T. Walker* for plaintiff.

*Edward W. Jacko, Jr.,* for defendant.

MATTHEW M. LEVY, J. The plaintiff has moved, in this action for a separation, to obtain an injunction *pendente lite* restraining the prosecution by the defendant of a suit for divorce subsequently initiated by him in the State of Arkansas. Service of the motion papers was made in December, 1953, upon the attorney of record for the defendant in the separation action in pursuance of an order to show cause permitting such service.

The attorney upon whom the moving papers were served avers that his client left the State of New York in September, 1953, and that he no longer represents the defendant, and that plaintiff's counsel was so advised prior to the service of the present motion papers. The attorney urges in consequence that the service of the order to show cause upon him is insufficient

upon which to base judicial action on the motion as against the defendant. Counsel's statement of claimed discharge is not supported by any communication from or affidavit by the client, but I prefer to deal with the matter as if a definitive cessation of the attorney-client relationship were convincingly proved.

A litigant is at liberty to defend the action himself — without recourse to an attorney. But if he appears by attorney, the client may not thereafter act in person except with the consent of the court (Civ. Prac. Act, § 236). The attorney having once been engaged and having appeared in the action, all subsequent proceedings must be conducted through him (*Webb* v. *Dill,* 18 Abb. Prac. 264). The plaintiff has no right in such case to deal with the defendant in person in the conduct of the suit, but must deal with the attorney who has appeared for the defendant (*Chadwick* v. *Snediker,* 26 How. Prac. 60). The attorney of record can be changed by filing a stipulation or obtaining an order of substitution (Rules Civ. Prac., rule 56). Where the '' attorney dies, is removed or suspended or otherwise becomes disabled '', no further proceeding can be taken in the action against the party for whom the attorney had appeared until adequate time has elapsed pursuant to notice to that party to appoint another attorney (Civ. Prac. Act, § 240).

No authorities have been cited by counsel, but my researches have disclosed that it has been held that where an attorney is '' discharged '', section 240 comes into play, and that before the client's adversary may proceed with the litigation, he must first serve the required notice and await the statutory thirty-day period (*Thomas* v. *Thomas,* 178 Misc. 349; but, see, *Langrick* v. *Rowe,* 32 N. Y. S. 2d 328, 337, affd. on another point 265 App. Div. 793, affd. 291 N. Y. 756). I cannot agree. It is my view that the statute was not intended to apply to this situation, and that there is no reason why the requirements of the section should be imposed in the case of an attorney's discharge. The '' removal '' envisaged by the statute does not occur when the client discharges his attorney; nor does '' disability '' as there used occur upon such discharge. The context clearly indicates other and definite meanings of the terms used. '' Removal '' is not, I feel, synonymous with a discharge by the client, but is rather a disciplinary act, more stringent than '' suspension '' — and both have to do with the attorney's license to practice law generally, not his or his particular client's desire to continue his representation in a specific case. '' Disability '' does not, I think, result from dismissal or withdrawal — which arises from the client's or attorney's acts in relation to each other — but

results rather from some constitutional or statutory disqualification (such as ascension to the bench) or personal condition of the attorney (such as insanity) having to do not with an individual retention or the attorney's relationship to an individual case but with his continuance in the practice of the law generally in pursuance of his license.

No doubt it is that when the client cancels his retainer, the attorney is relieved of responsibility to the client for the prosecution or defense of the action. And I think that when all that there is is a retention and a subsequent discharge — without more — the attorney is relieved of that responsibility — but of no more. For, thus far, we needed to consider only the matter of professional engagement and of its continuance. The garment up to now was — and could be — tailored by client and attorney to suit their own tastes. But a notice of appearance on behalf of a litigant is not a professional retainer. It is a device adopted and utilized to facilitate the mechanics of litigation — and is a technique in that behalf not only for the benefit of the client, but for the aid of the adversary and the judicial process as well. As such it is a protective cloak which cannot cavalierly be completely discarded — even by those who brought it into being — and this notwithstanding how worn the garment may have become or how unsightly the present fit. The cloth may now be ragged, but it is rugged enough nevertheless to protect others from unjust chills.

While it is true that the assumption of the relationship of client and attorney is in the first instance entirely voluntary, and its continuance as between them is consensual, I believe that where an appearance has been entered by an attorney for his client in the litigation certain incidents of the relationship *vis-a-vis* the opposition and the court survive dissolution of that relationship. One of those incidents necessarily is the preservation of the appropriate jurisdiction of the court (originally accepted) to effectuate service upon the attorney in the client's behalf of motion papers in the pending litigation — at least until there has been a proper stipulation or order of substitution of attorneys, or an order of the court relieving the present attorney of the obligations he initially assumed as an officer of the court in relation to his adversary when he served his notice of appearance (*Guzowski* v. *Guzowski*, 25 N .Y. S. 2d 365).

As a consequence, I hold that the defendant here remained bound by the representation of record, and that the plaintiff could properly have relied upon it when instituting this motion. Were any other rule adopted, the situation would be open to

fraud, an adverse party might be unjustly frustrated at a critical moment, and a harassing and confusing jurisdictional void might be created in the matter of the service of interlocutory applications in lawsuits pending in this court. Such a result is as inequitable as it is unnecessary. A client genuinely desirous of discharging an attorney who had previously duly appeared for him is not without remedy, and neither is the court. Had an application for a change of status been made by the defendant or his attorney, the court might have required notice thereof to the plaintiff, and in its determination might very properly have seen fit (as a condition for permitting the change, at least insofar as service of papers in the litigation upon the defendant was concerned) to require the defendant to provide for such service upon himself or some other person at some place within the State. And this certainly would have been done where the *bona fides* of the claimed cessation of representation is in some doubt.

The moving affidavit states that the defendant lived with the plaintiff at their home in New York City until May, 1953, and that the summons in the New York suit was served upon the defendant in New York City in August, 1953. In his answer in the separation action the defendant admitted that he was a resident of this State as late as August, 1953. In the Arkansas action, instituted in November, 1953, the defendant alleges that he has been a resident of that State for more than one year preceding the filing of his suit. It is thus apparent that there is sufficient prima facie showing of absence of bona fide domicile in the foreign jurisdiction. The proof thus adequately supports the application for the relief requested. But of what enforcible effect would *Garvin* v. *Garvin* (302 N. Y. 96) be, if (before a plaintiff might serve an order to show cause praying that the defendant be immediately enjoined from the prosecution of a fraudulent foreign divorce) she were first compelled to give notice to the defendant that he select a substitute attorney? The law should not be so weak or so docile as to encourage that kind of procedure.

The objection to the jurisdiction is overruled, and the motion is granted. Settle order on notice to the defendant's attorney of record.