ELEANOR BALOGH et al., Appellants, v H.R.B. CATERERS, INC., et al., Defendants, and LAMPLIGHTERS LOUNGE, INC., Respondent. (Action No. 1.)

ELEANOR BALOGH et al., Appellants, v ROCKLAND CONSTRUCTION HALL, INC., Respondent. (Action No. 2.)

Second Department, July 12, 1982

**APPEARANCES OF COUNSEL**

*Hurley, Fox, Selig & Robustelli (Ralph Joseph* of counsel), for appellants.

*McCaffrey & Condon (Francis J. McCaffrey* of counsel), for respondents.

**OPINION OF THE COURT**

TITONE, J.

In two related actions consolidated for trial, plaintiffs seek to recover, *inter alia,* damages for personal injuries suffered by Eleanor Balogh when she slipped and fell on a dance floor in a restaurant where she was attending a

dinner dance. At the trial and during the presentation of plaintiffs' case, the Trial Judge denied their attorney's motion for a short continuance and then dismissed both actions. Plaintiffs' appeal is from a subsequent order of the same Judge denying their application to set aside the dismissal of the cases and to restore them to the calendar for trial. Although the Trial Judge considered their application as a posttrial motion pursuant to CPLR 4404 for a new trial, the underlying issue on appeal is whether, under the circumstances, the Trial Judge was justified in denying the request of plaintiffs' counsel for a continuance in order to enable him to produce a person on behalf of the plaintiffs who would be both a "notice" witness and an eyewitness to the occurrence.

In the first-enumerated action it is alleged in the complaint that on May 9, 1975, the plaintiff wife, Eleanor Balogh, slipped and fell while walking along the edge of a dance floor in the premises operated and controlled by the defendants therein. In the second action, against defendant Rockland Construction Hall, Inc., in addition to reciting similar allegations as to the accident, plaintiffs also allege that Rockland Construction was the owner of the building where the incident occurred.

The thrust of the plaintiff wife's claim, as reflected in her bill of particulars, is that her fall resulted from the negligence, *inter alia,* of defendants' agents or employees in allowing water or other liquid located at a nearby serving station to be spilled onto the dance floor, and in failing to have the wet area cleaned up after being given notice of the condition by another guest (Grace Campbell) prior to the accident.

Pursuant to a summer trial program initiated by the Administrative Judge, the actions were set down for trial for the early part of August, 1980. The trial was rescheduled for the 21st of that month, and on that date it was adjourned to Tuesday, August 26, because plaintiffs' counsel was actively engaged in another trial.

The parties selected a jury on the 26th, and proceeded to trial the following morning. Before the trial was recessed on the 27th, testimony was elicited from both plaintiffs and one of the eyewitnesses to the accident.

On the morning of Thursday, August 28, plaintiffs' counsel, Harry Fox, advised the Trial Judge that he had no further witnesses available to testify that day and the following day. He represented to the court that Mrs. Grace Campbell, who not only was an eyewitness to the accident, but also saw the water condition on the floor prior thereto and asked waiters and waitresses to do something about it before someone was hurt, would not return to Rockland County from a vacation at the New Jersey shore until Friday evening, August 29. Fox then requested a trial continuance until the morning of Tuesday, September 2, 1980 (the day after Labor Day). In his affirmation in support of the within motion to restore the case to the Trial Calendar, Fox represented to the court that on the evening of August 27, 1980, at the end of the first day of the trial, he learned that Mrs. Campbell had left on Monday evening, August 25, 1980, for a short vacation with her family at the New Jersey shore. Fox stated that without testimony from Mrs. Campbell he knew of no way he could make out a prima facie case.

After a short colloquy amongst the Trial Judge and the attorneys for the respective parties, the Trial Judge made the following remark: "I am going to put a call in to the Administrative Judge, because he called this calendar. *He controls this calendar.* I will advise him what the equities are. *As you know, we have lost our autonomy.* We will have a recess and I will discuss it with His Honor and so advise you." (Emphasis supplied.)

When court was reconvened following the recess, the Trial Judge read a statement given by Mrs. Campbell on behalf of the plaintiffs. In it she stated, *inter alia,* that upon seeing the water spill on the floor she went to the kitchen and asked waiters and waitresses to clean up the water because one of the dancers might slip and fall. Although a number of those employees did use napkins to clean up some of the water, an accumulation of water still remained on the floor when Mrs. Balogh's feet went out from under her while she was dancing.

After he finished reading Mrs. Campbell's statement, the Trial Judge rendered the following decision on plaintiffs' motion for a continuance:

*"I have brought this matter to the attention of the Administrative Judge. I have reviewed the arguments that were presented to me and predicated on a review of the entire situation, the Court at this time denies the application for a continuance, regretfully.*

*"So the case, unfortunately, is dismissed."* (Emphasis supplied.)

No written order was entered by either party on the decision of the Trial Judge on August 28, 1980. However, approximately five and one-half months later (February 12, 1981), plaintiffs brought the within application to set aside the dismissal and to restore the action to the Trial Calendar. The Judge who presided over the aborted trial, and to whom the application was referred, considered it to be a posttrial motion pursuant to CPLR 4404 for a new trial, and then denied it as being untimely pursuant to CPLR 4405. We disagree not only with his treatment of the subject application procedurally, but with his final determination thereof, and with his earlier denial of the application for a continuance and his dismissal of plaintiffs' case.

CPLR 4404, entitled "Post-trial motion for judgment and new trial", provides as follows:

"(a) Motion after trial where jury required. After a trial of a cause of action or issue triable of right by a jury, upon the motion of any party or on its own initiative, *the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence, in the interest of justice or where the jury cannot agree after being kept together for as long as is deemed reasonable by the court.*

"(b) Motion after trial where jury not required. After a trial not triable of right by a jury, upon the motion of any party or on its own initiative, the court may set aside its decision or any judgment entered thereon. It may make new findings of fact or conclusions of law, with or without taking additional testimony, render a new decision and direct entry of judgment, or it may order a new trial of a cause of action or separable issue." (Emphasis supplied.)

As the above-quoted language clearly indicates, for a motion to be brought under CPLR 4404, there must be a presentation by the parties of evidence to a jury or to the court sitting without a jury, and either a verdict or decision rendered and perhaps a judgment entered thereon, or a hung jury. CPLR 4404 was designed to unify the motion for a new trial with that for a judgment notwithstanding the verdict or decision (Second Preliminary Report of Advisory. Committee on Practice and Procedure, 1958, p 310).

In this instance the trial never proceeded to a verdict by the jury, nor was the jury hopelessly deadlocked. Instead, the trial was aborted during plaintiffs' case by the Trial Judge's denial of the motion for a continuance and *sua sponte* dismissal of the consolidated actions. Thus, the Trial Judge erred in treating plaintiffs' application herein as a "post-trial motion for judgment and new trial" under CPLR 4404.

Since CPLR 4404 was erroneously applied in this instance it follows that CPLR 4405, entitled "Time and judge before whom post-trial motion made", upon which the Trial Judge relied in denying the application as untimely, was likewise inapplicable. Although the 15-day period set forth in CPLR 4405 is applicable *to a posttrial motion under CPLR 4404,* such statutory limitation does not apply to motions made under other provisions of the same article (CPLR art 44) *which deal solely with motions made during trial,* i.e., CPLR 4401 ("Motion for judgment during trial"), and CPLR 4402 ("Motion for continuance or new trial during trial"). (See Siegel, Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 7B, 1964-1981 Supp Pamphlet, CPLR 4405, p 170.)

We are also of the opinion that the trial court erred initially in denying plaintiffs' motion on the Thursday before Labor Day for a trial continuance over the Labor Day weekend. The record indicates that plaintiffs' trial counsel made diligent efforts to locate Mrs. Campbell during the week of the trial, but did not learn until the Wednesday evening before Labor Day, and after the trial had started, that she was out of State on vacation and would not be available to testify until the day after Labor Day. It is undisputed that her testimony was crucial not

only as an eyewitness to the accident but also as one who gave actual notice of the alleged slippery condition of the dance floor to waiters and waitresses shortly before the occurrence (cf. *Bruce v Hospital for Special Surgery,* 34 AD2d 963). In addition it does not appear from the record that respondents would have been prejudiced in any way by a granting of the continuance requested by plaintiffs' counsel (see *O'Brien v King,* 254 App Div 318). It is an abuse of discretion to deny a continuance where the application complies with every requirement of the law and is not made merely for delay, where the evidence is material and where the need for a continuance does not result from the failure to exercise due diligence (cf. 17 CJS, Continuances, § 46; *Ludlam v Riverhead Bond & Mtge. Corp.,* 244 App Div 113). Liberality should be exercised in granting postponements or continuances of trials to obtain material evidence and to prevent miscarriages of justice (cf. *Canal Oil Co. v National Oil Co.,* 19 Cal App 2d 524).

Thus, in the interest of justice plaintiffs should have been granted the short delay sought by them in order to produce the witness whose testimony was material and necessary to their case (see CPLR 4402; cf. *Ali v Ali,* 60 AD2d 615, 616).

Furthermore, under the circumstances, we believe the Trial Judge also erred in dismissing plaintiffs' case immediately following his denial of the application for a continuance although no motion to dismiss had been made beforehand by any of the defendants. In general, a defendant has the obligation to apply for dismissal or nonsuit of a plaintiff's case on proper grounds. Thus, an action should not be involuntarily dismissed where a defendant has not requested a dismissal (27 CJS, Dismissal and Nonsuit, § 48; *Fischer v Mead Johnson Labs.,* 41 AD2d 737). The dismissal of a complaint before plaintiff rests his case is premature and should not be "upheld" (*Levy v Goldman,* 252 App Div 781; cf. *Shapiro v Frankel,* 243 App Div 618; *Mordoh v City of New York,* 270 App Div 896).

We deem it essential at this time to voice our strong disapproval of the action taken by the Trial Judge in surrendering his responsibility to determine the application for a continuance during the course of a trial and

relying instead upon instructions from the Administrative Judge. The Trial Judge's astounding and totally unwarranted concession in open court that "As you know, we [Trial Judges] *have lost our autonomy*" (emphasis supplied), constituted gross abdication of *his judicial responsibility*. We agree that the Chief Judge of the State of New York and the Chief Administrator, under broad administrative powers vested in them pursuant to law, may supervise, control and promulgate Trial Calendars throughout the State court system (NY Const, art VI, §§ 28, 30; Judiciary Law, art 7-A). We also acknowledge that such administrative authority over Trial Calendars may be delegated to Deputy Chief Administrators and Administrative Judges (Judiciary Law, § 212, subd 1, pars [b], [s]). However, we state unequivocally and without qualification, that once a judicial proceeding such as a jury trial has commenced, or is in progress, the Judge to whom the case has been assigned has the exclusive jurisdiction and authority to determine issues coming before him, including, but not limited to, the reception of evidence, the conduct of counsel, instructions to the jury, and motions for a mistrial, for a continuance, or to set aside a verdict. A Judge may not delegate or surrender his judicial authority to someone else by administrative order or otherwise as the Trial Judge did here but must exercise such authority himself (cf. *Brown v Brown,* 71 Misc 2d 818, affd 39 AD2d 897, app dsmd 31 NY2d 956; *Matter of Nowakowski,* 284 App Div 655, rearg granted and decision adhered to 1 AD2d 250, mot for lv to app den 2 AD2d 646). As Mr. Justice McQUILLAN so aptly stated in *People v Little* (NYLJ, April 21, 1982, p 26, col 1): *"[O]ne thing is clear: no Supreme Court Justice may unconstitutionally surrender to, or unlawfully and unethically share his or her adjudicative duties and responsibilities with a program director"* (emphasis supplied). "A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, *neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding"* (Code of Judicial Conduct, Canon 3, subd A, par [4]; emphasis supplied).

Moreover, in deferring to the Administrative Judge with respect to the granting or denying of the application for a continuance, the Trial Judge relinquished the statutory power vested in him to make such trial decisions pursuant to the clear, unambiguous and unequivocal language contained in CPLR 4402 entitled, *"Motion for continuance* or new trial during trial": *"At any time during* the trial, *the court,* on motion of any party, may order a continuance or a new trial in the *interest of justice on such terms as may be just."* (Emphasis supplied.)

The granting of a continuance is an exercise of judicial discretion upon particular facts, with appropriate opportunity for counsel to be heard, and is exclusively a judicial act (cf. *Burt v Williams,* 24 Ark 91, 94). As a general rule the granting or refusing of a continuance is within the sound discretion of the trial court, and in the absence of an abuse of discretion, will be upheld on appellate review (17 CJS, Continuances, § 5; 17 Am Jur 2d, Continuance, § 3). A Trial Judge observes the case and knows the surrounding facts and circumstances; hence, he is in a better position than an appellate court (and for that matter an Administrative Judge, a nonjudicial officer, or a computer) to determine whether the design of a party making a motion for a continuance is delay, or whether a continuance is essential to the interests of justice (*Miller v Grier S. Johnson, Inc.,* 191 Va 768).

We likewise are of the opinion that a policy which requires Administrative Judges to interfere with, and to intrude upon, the judicial process, usurping the power of Trial Judges to grant or deny a trial continuance, also warrants comment. Without elaborating upon constitutional and statutory provisions pertaining to the authority of the Chief Judge and Chief Administrator to regulate practice and procedure in the courts, and to delegate such authority to Administrative Judges, it suffices to say that there is no provision contained in any such law which expressly or impliedly permits the delegation to an Administrative Judge of the power to supersede, overrule, control or aid a Trial Judge in carrying out his adjudicative responsibilities. Delegation of administrative powers to a Judge is limited and does not increase the judicial power or

authority of such Administrative Judge as to give him authority to overrule decisions made by other Judges in cases properly assigned to them, or to make the decisions for such other Judges.

We are frankly disturbed by what countless members of this State's judiciary have perceived to be determined and pervasive efforts to dilute and perhaps even eviscerate their constitutional, statutory, traditional and inherent decision-making powers under the shibboleth "Administrative Court Reform". The unjustified transfer of judicial power to administrators, at the trial level, undermines the traditional concept of judicial independence in the decision-making process. Unless terminated, such an administrative policy would in time inevitably relegate the judiciary to a ministerial role of referring both substantive and procedural issues to an unresponsive and unqualified bureaucracy.

We are not unmindful of the dedicated efforts of the Trial Bench in their attempt to cope with the ever increasing torrent of cases inundating the courts of this State. In addition, we are cognizant of the tireless endeavors of court administrators, judicial and nonjudicial alike, who strive assiduously to institute administrative reforms which will promote simplicity in procedure, the just determination of cases, and the elimination of unjustifiable expense and delay in litigation. It must be emphasized, therefore, that this court wholeheartedly supports conscientious and prudent efforts to promote efficiency by alleviating case congestion and reducing trial delay.

However, we strongly oppose the implementation of proposed changes in the name of court reform which are violative of the Constitution and statutes of this State, and unjustly affect the rights of litigants. Indeed, it would be ironic if, in the quest to remove obstacles now impending the speedy administration of justice, additional roadblocks are unwittingly set up by the precipitous promulgation of onerous and ill-conceived directives which result in injustice.

Accordingly, the order denying plaintiffs' application to set aside the trial court's dismissal of the actions and to

restore the cases to the Trial Calendar should be reversed and the motion granted.

MOLLEN, P. J., THOMPSON and NIEHOFF, JJ., concur.

Order of the Supreme Court, Rockland County, entered April 6, 1981, reversed, with $50 costs and disbursements, and plaintiffs' motion is granted.