THOMAS CUEVAS, Respondent, v GLORIA CUEVAS, Appellant.

On December 18, 1971, Thomas Cuevas, the plaintiff, and Gloria Cuevas, the defendant, were married, having previously lived together since 1960 or 1961. They have two children, one of whom, their daughter Deborah, was emancipated by the time this action was tried.

Problems developed between the parties and, in May 1979, the plaintiff left the marital residence. They have not lived together since that time.

On or about July 19, 1982, the plaintiff commenced this action by the service of a "Summons with Notice", stating as grounds for divorce, cruel and inhuman treatment and adultery. The defendant answered and counterclaimed for divorce, alleging abandonment.

This matter proceeded to trial on January 16, 1984, at which time counsel informed the court that the parties had agreed to stipulate as follows: "[T]he Defendant * * * will not contest the Plaintiff's request for a decree of absolute divorce predicated on the first cause of action [cruel and inhuman treatment], and that the Plaintiff will withdraw his Verified Reply and not oppose the defendant's request for a divorce predicated upon the sole cause of action within the Verified Answer sounding in abandonment". The parties also agreed to stipulate as follows: "[In] regard to the minor child Thomas * * * that there shall be joint custody with respect to said child. That all major decisions concerning the general health, education and welfare of the child shall be made jointly by the parties, but that it is specifically understood that the child shall physically reside with the Plaintiff father, subject to visitation rights either to be spelled out on the record by and between Counsel, or in the alternative to be fixed by this Court".

The court conducted an inquest at which the parties, *inter alia*, testified in support of their respective causes of action for divorce and withdrew, with prejudice, their opposition to one another's cause. At the conclusion of the inquest, the court stated: "[W]ith respect to the respective testimonies as given with regard to divorces that each party seeks, we would grant each of their applications. And grant such divorces on the basis

of testimony given today to this Court, and we will, of course, accept in full the stipulation that has been entered into by the parties as well". The court also advised counsel that when the proceedings resumed that afternoon they should be prepared to proceed to trial on the remaining issues, viz., equitable distribution, maintenance, and arrears.

Upon reconvening a few hours later, the defendant's counsel advised the court that his client no longer wanted him to represent her primarily because counsel "produced no proof that could be used * * * to establish her net worth and the marital assets of her husband". Counsel added: "[T]his is an essential matter, as far as she is concerned, in this case. She had agreed previously to a mutual judgment of divorce and joint custody of her infant child. I, therefore, ask that the Court discharge me, permit Mrs. Cuevas to engage counsel to represent her in this matter". A six-week adjournment was requested to enable defendant to retain counsel on the remaining economic issues.

An extensive colloquy concerning the requested adjournment ensued among counsel for both sides and the court. In support of the request, counsel for the defendant, *inter alia,* argued that "contrary to what my opponent has said, there has been no adequate disclosure * * * To this date I have received nothing". Moments later, counsel added that his client "has no records. The only thing we have is a statement that he [the plaintiff] made back in 1980 as to what his — his statement as to his net worth when he was negotiating with some prior attorneys. That's all". Expressing his frustration over his inability to obtain full disclosure, notwithstanding his efforts, counsel said, "I don't know what we have to do to get the facts with respect to the economic background of the Plaintiff".

In response, the court presented the defendant with three options: "One is to reconsider and continue Mr. Berman as your attorney. Secondly, you will represent yourself. Thirdly, I'll give you time to call an attorney right now. I will tell you now that if you wish another attorney to represent you, I'll permit that. If you choose to. He may be here or she may be here tomorrow morning to commence this trial. I will not delay it. I will not adjourn it. I will not afford the new attorney any time, but tomorrow to start this case. Now those are your options. I will not allow for any reason to come into this court, and I dare say no judge would allow, once the case has been assigned for trial that, it be adjourned for the reasons you have set forth in this matter. So I'll give you time to talk to Mr. Berman again. We'll take a very short recess, and then you can tell me what you choose to do". The defendant continued to insist that she did not

want her then attorney to represent her, to which the court answered: "At this point, Miss [sic] Cuevas, the Court would then permit this case to continue with or without an attorney on your part, if that's what you choose to do * * * And I've given you an opportunity to go out and reconsider about this, and you tell me you still do not wish to have Mr. Berman represent you. You have that right. Nobody will require you or force you to have Mr. Berman if you choose not to. But your alternatives are what I told you. Either represent yourself in this matter, or the second is that you will engage an attorney to be here tomorrow morning to commence the trial and represent you in this action. But I tell you in advance, I will not permit a delay or an adjournment of the case so that the new attorney on the scene would ask for time so that he might familiarize himself with the file. I will not permit that". The court again denied the defendant's request for "more time to get myself an attorney", and adjourned the matter at approximately 4:00 P.M., directing the defendant to return the next morning at 9:30 A.M. and warning her that the only excuses which the court would accept were death or hospitalization "with a serious illness".

The following morning, the defendant advised the court that she was unable to retain another attorney, and that she had not reconsidered her decision to discharge her attorney. The court directed the defendant to present "any evidence or testimony you would wish to give this morning", which she obviously did not have the ability to do. The court therefore concluded: "[Any] actions or any proof that you would make in this case is not before the Court on any issues raised by your Pleadings, and any actions raised by your Pleadings at this point are dismissed for lack of prosecution and your default in proceeding with the case". The plaintiff husband presented evidence only "as to one very limited issue", viz., the sale of the marital residence and the distribution of the net proceeds.

By judgment dated February 17, 1984, the parties were granted dual divorces. The judgment also provided, *inter alia,* that the parties were to have joint custody of their minor child Thomas; that Thomas was to reside with the plaintiff; that the defendant was to have "liberal and reasonable visitation privileges" with Thomas; that the marital residence in Pelham Manor was to be sold at a mutually agreeable price; that the plaintiff was to deduct from the gross proceeds of this sale any amounts expended by him in the repair, improvement or maintenance of the residence in the 60-day period after entry of the judgment; and that, after deduction of the mortgage and real estate commissions, if any, the net proceeds of the sale were to

be divided as follows: 75% to the plaintiff and 25% to the defendant. The defendant appeals from the judgment to the extent that Special Term determined, or failed to determine, the economic issues between them, in essence contending that the denial of her request for a reasonable adjournment to retain counsel deprived her of a meaningful opportunity to present her case on these issues.

The law is clear that applications for adjournments for any purpose are ordinarily addressed to the trial court's sound discretion (*Matter of Anthony M.,* 63 NY2d 270, 283; *People v Spears,* 64 NY2d 698; *People v Africk,* 107 AD2d 700; *Spodek v Lasser Stables,* 89 AD2d 892). In deciding such applications, the court must "indulge in a balanced consideration of all relevant factors" (*Wilson v Wilson,* 97 AD2d 897, 898). We conclude that, under the circumstances in the case at bar, Special Term's denial of an adjournment for a reasonable length of time to enable the defendant to obtain counsel to protect her economic interests was an abuse of discretion.

First, the parties were married in 1971 and had been living together since 1960 or 1961. They have two children, one of whom was not emancipated when this action came to trial. The marriage therefore was one of some duration.

Second, during the marriage, considerable assets were apparently accumulated. For example, the parties agreed that the fair market value of the marital residence was $195,000. In addition, the defendant has alleged that, as a consequence of the plaintiff's business and real estate interests, his net worth was several million dollars. The plaintiff has nowhere challenged this allegation nor has he alleged that the defendant has substantial assets, too. Indeed, the record before us seems to support the opposite conclusion.

Significantly, Special Term's judgment dissolving this marriage provided that 75% of the net proceeds of the sale of the marital residence were to be distributed to the plaintiff while 25% of the proceeds were to be distributed to the defendant. No other determinations were made as to equitable distribution of marital assets, nor does it appear in the record that Special Term sufficiently "set forth the factors it considered and the reasons for its decision" as required by Domestic Relations Law § 236 (B) (5) (g) (*see, Hornbeck v Hornbeck,* 99 AD2d 851).

Third, the defendant stipulated to dissolution of the marriage and joint custody of the parties' minor child. The only issues she sought to litigate were the economic issues — issues which defense counsel candidly acknowledged he was not prepared to litigate. Plainly, this defendant was not, as suggested by the dissent, manipulating the system to gain an undue advantage.

Equally clear is the fact that this is not a case of "differences over strategy or tensions between client and counsel on the eve of trial". Rather, the defendant was seeking to litigate the only significant issues dividing the parties and to present her claims which, on the record before us, arguably have merit (*see, Wilson v Wilson, supra,* p 898).

Fourth, though she initially requested a six-week adjournment, the defendant later moderated her position and requested "more time" than the overnight permitted by the court to secure an attorney. Mindful that the court has general authority to control its calendar (*People v Douglass,* 60 NY2d 194, 197, *mot to amend opn denied* 60 NY2d 926), a reasonable adjournment, consistent with the court's control of its calendar and the rights of the litigants, could have been agreed upon. Notably, there are no allegations that a reasonable adjournment would have prejudiced the plaintiff's case.

Fifth, the reason for the request itself, which implicates the right of a civil litigant to be represented by the counsel of her choice, was significant too. As observed by the Court of Appeals in *Demov, Morris, Levin & Shein v Glantz* (53 NY2d 553, 556), "The unique relationship between an attorney and client, founded in principle upon the elements of trust and confidence on the part of the client and of undivided loyalty and devotion on the part of the attorney, remains one of the most sensitive and confidential relationships in our society. A relationship built upon a high degree of trust and confidence is obviously more susceptible to destructive forces than are other less sensitive ones. It follows, then, that an attorney cannot represent a client effectively and to the full extent of his or her professional capability unless the client maintains the utmost trust and confidence in the attorney". This philosophy, according to the Court of Appeals, "engendered the development of the rule, now well rooted in our jurisprudence, that a client may at any time, with or without cause, discharge an attorney" (*Demov, Morris, Levin & Shein v Glantz, supra,* p 556). Sufficient weight was not given to these considerations by Special Term when it decided the defendant's application.

Finally, we share the dissent's concern that parties to an action should not be permitted or encouraged to manipulate the judiciary and thereby gain an undue advantage. Similarly, we agree that the court should not surrender calendar control to the litigants. We disagree, however, that our ruling, limited as it is to the facts herein, will open the door to the apocalyptic results envisioned by the dissent. Indeed, our ruling is compelled by the manifestly inequitable result reached by Special Term which

"equitably distributed" to the plaintiff husband 75% of the net proceeds from the sale of the marital home, valued at $195,000, and 25% to the defendant wife, and left undistributed the remaining substantial marital assets.

Accordingly, the judgment should be reversed insofar as appealed from, and the matter remitted to Special Term for trial on the economic issues presented. Mollen, P. J., Lazer and Rubin, JJ., concur.

Titone, J., dissents and votes to dismiss the appeal from the judgment and to affirm the order insofar as appealed from, with the following memorandum: This a matrimonial action. In the midst of trial, the defendant wife became dissatisfied with her attorney, discharged him, and requested approximately a six-week adjournment to obtain new counsel. The court advised her, in essence, that she would have to either continue with present counsel or act *pro se*. Thereafter, the wife defaulted. Today, the majority rewards her tactics with a new trial. I dissent.

Defendant, of course, had the right to discharge her attorney at any time, with or without cause (CPLR 321; *see, e.g., Myers v Myers,* 5 Misc 2d 955 [Matthew M. Levy, J.], *affd* 5 AD2d 865, *lv denied* 5 NY2d 798), but had no right to frustrate the course of the trial (*see, Hendry v Hilton,* 283 App Div 168, 171; *Cann v Cann,* 204 Misc 1069 [Matthew M. Levy, J.]). One cannot use the right to counsel " 'to play a "cat and mouse" game with the court * * * or by ruse of stratagem fraudulently seek[ing] to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel' " (*Kates v Nelson,* 435 F2d 1085, 1088-1089, quoting from *United States ex rel. Davis v McMann,* 386 F2d 611, 618-619; *see also, Dunn v Eickhoff,* 43 AD2d 580, *affd* 35 NY2d 698).

I have no quarrel with the proposition that courts are liberal in vacating defaults in matrimonial actions. This is so because third-party rights, such as the welfare of children, should not be decided in the absence of a full and complete understanding of the pertinent facts. But certainly this principle does not require that the courts abrogate calendar control to the litigants. Indeed, even in criminal cases, differences over strategy or tensions between client and counsel on the eve of trial would not entitle the defendant to a last-minute adjournment and substitution (*see, e.g., People v Tineo,* 64 NY2d 531; *People v Medina,* 44 NY2d 199, 208). Why should the result be any different in a civil case?

In fact, the United States Supreme Court (*Link v Wabash R. R. Co.,* 370 US 626, 633-634) and this court have recognized

that "it would be a perversion of our adversary system if a litigant could be deprived of a victory because of the dereliction of his or her opponent" (*Department of Social Servs. v Trustum C.D.*, 97 AD2d 831, *lv denied* 61 NY2d 605). It "is well settled in civil litigation that an attorney's errors or omissions are binding on the client * * * absent extraordinary circumstances such as the attorney's mental illness" and that interest of justice review should not be employed "merely to give the unsuccessful litigant a second chance at bat" (*Department of Social Servs. v Trustum C.D., supra,* p 831).

This is hardly an exceptional case. The matter had been before the court several times and defendant purportedly had no attorney who was willing to undertake her representation within a short period of time. Review of the record, however, suggests that even this might have been a ploy because the attorneys whom she contends needed more time are the attorneys representing her on appeal.

It is basic that the "granting of an adjournment for any purpose is a matter resting within the sound discretion of the trial court" (*Matter of Anthony M.*, 63 NY2d 270, 283). I simply cannot perceive how the Trial Judge abused his discretion.

Unlike *Balogh v H.R.B. Caterers* (88 AD2d 136), the adjournment was not for a matter of a few days to allow an identified key witness an opportunity to testify. Nor did the Trial Judge purport to delegate his authority to the Administrative Judge. What defendant sought was an open-ended continuance and the Trial Judge properly considered all interests — the plaintiff's, the defendant's, and the public's.

In the past, we have refused to permit litigants who gamble, through the manipulation of the right to counsel, to hedge their bets, and, when the gamble fails, to obtain a new trial on appeal (*Dunn v Eickhoff*, 43 AD2d 580, *affd* 35 NY2d 698, *supra; cf. Department of Social Servs. v Trustum C.D., supra*). Apparently, these precedents are no longer to be followed. This is most unfortunate because any litigant who is disappointed with the progress of the trial — whether it be on the merits, related to the composition of the jury, or even related to the Trial Judge himself — now has the power to abort the trial simply by announcing an intention to change counsel. I cannot agree with such a result.