OPINION OF THE COURT
Thomas F. Whelan, J.
In this mortgage foreclosure action, the plaintiff moves for an order: (1) awarding it summary judgment against the answering *629 defendants, James F. Pace and Linda Pace; (2) fixing the defaults in answering of the non-answering defendants; (3) substituting one or more occupants found at the premises for unknowns named in the caption and/or otherwise deleting as party defendants certain named defendants; and (4) appointing a referee to compute amounts due under the subject mortgage. The motion is considered under CPLR 3215 and 3212 and RPAPL 1321 and is granted.
The moving papers established the plaintiffs entitlement to summary judgment on its complaint to thg extent it asserts claims against answering defendants Pace as such papers included copies of the mortgage, the unpaid note and evidence of a default under the terms thereof (see CPLR 3212; RPAPL 1321; Wells Fargo Bank, N.A. v Cohen, 80 AD3d 753 [2d Dept 2011]; Argent Mtge. Co., LLC v Mentesana, 79 AD3d 1079 [2d Dept 2010]; Zanfini v Chandler, 79 AD3d 1031 [2d Dept 2010]; Countrywide Home Loans, Inc. v Delphonse, 64 AD3d 624 [2d Dept 2009]; Wells Fargo Bank Minn., N.A. v Perez, 41 AD3d 590 [2d Dept 2007]; Household Fin. Realty Corp. of N.Y. v Winn, 19 AD3d 545 [2d Dept 2005]). The moving papers further demonstrated that the first and second counterclaims asserted in the answer of the Pace defendants wherein they seek sanctions or money damages due to the purported illegal actions in enforcing the remedies available to the plaintiff in this action, are without merit (see Ladino v Bank of Am., 52 AD3d 571 [2d Dept 2008]).
It was thus incumbent upon the answering defendants to submit proof sufficient to raise a genuine question of fact rebutting the plaintiffs prima facie showing or in support of the affirmative defenses and counterclaims asserted in their answer (see Grogg v South Rd. Assoc., L.P., 74 AD3d 1021 [2d Dept 2010]; Washington Mut. Bank, F.A. v O’Connor, 63 AD3d 832 [2d Dept 2009]; JP Morgan Chase Bank, N.A. v Agnello, 62 AD3d 662 [2d Dept 2009]; Household Fin. Realty Corp. of N.Y. v Winn, 19 AD3d 545 [2005], supra). The opposing papers submitted by the defendants were insufficient to raise any genuine question of fact requiring a trial on the merits of the plaintiffs claims for foreclosure and sale. They were also insufficient to demonstrate any bona fide defenses or that their counterclaims are cognizable.
The most recent submission of opposing papers by the defendants reveals that they offer no proof or arguments in support of their counterclaims. They also offer no proof or arguments in support of any of their pleaded affirmative defenses *630 other than their tenth affirmative defense which challenges the standing of the plaintiff. In addition to their assertion of this standing defense, the defendants raise procedural arguments which challenge the propriety of the plaintiffs submissions.
The defendants claim that this motion is procedurally improper due to the plaintiffs failure to attach a certificate of conformity of the type contemplated by Real Property Law § 299-a for oaths taken in states other than New York. The defendants complain that the affidavit of merit attached to the plaintiffs moving papers and the assignment of mortgage, upon which the plaintiff relies to establish its ownership of the note and mortgage, fail to conform to the certificate requirements of Real Property Law § 299-a which renders them inadmissible proof under the provisions of CPLR 2309. These claims are, however, rejected by this court. It is well settled law that the absence of a certificate of conformity for oaths taken out of this state but in sister states, is a mere irregularity, not a fatal defect, which can be ignored in the absence of a showing of actual prejudice (see Real Property Law § 299-a; CPLR 2309; Betz v Daniel Conti, Inc., 69 AD3d 545 [2d Dept 2010]; Matapos Tech. Ltd. v Compania Andina de Comercio Ltda, 68 AD3d 672 [1st Dept 2009]; Smith v Allstate Ins. Co., 38 AD3d 522 [2d Dept 2007]).
Additionally, a reading of the relevant provisions of Real Property Law § 299-a shows the certificate authenticating the authority of the one who administers an oath to an out of state affiant is not required for every oath taken in a sister state. Said statute provides, in relevant part, as follows:
“An acknowledgment or proof made pursuant to . the provisions of section two hundred ninety-nine of this chapter may be taken in the manner prescribed either by the laws of the state of New York or by the laws of the state, District of Columbia, territory, possession, dependency, or other place where the acknowledgment or proof is taken. The acknowledgment or proof, if taken in the manner prescribed by such state, District of Columbia, territory, possession, dependency, or other place, must be accompanied by a certificate to the effect that it conforms with such laws” (Real Property Law § 299-a [1] [emphasis added]).
Under this court’s reading of the statute, no certificate of conformity is required where an oath is taken in a sister state by a notary public, as none is required by the laws of New York *631 for oaths taken by notaries here. In any event, the omissions complained of by the defendants appear to have been remedied in the plaintiffs further reply papers.
Also unavailing are the defendants’ claims that the plaintiffs failure to supply an affirmation of the type required by the October 20, 2010 administrative order No. 584-10 issued by the Chief Administrative Judge warrants a denial of this motion. This order requires counsel for the plaintiff to verify the accuracy of documents filed in support of residential foreclosure actions. The order does not require the filing of the affirmation on motions for accelerated judgments that are submitted in conjunction with orders of reference, as the affirmation may be supplied on the motion for the judgment of foreclosure and sale. The plaintiffs submission of an affirmation within the contemplation of the rule as an attachment to the plaintiffs surreply papers was thus not required by the terms of Administrative Order No. 584-10.
Nevertheless, the defendants’ advancement of claims that this court may not entertain, let alone grant, the instant motion for accelerated judgments and the appointment of a referee to compute pursuant to RPAPL 1321 due to the absence of the affirmation contemplated by Administrative Order No. 584-10, has caused this court to examine such order’s effect upon the jural relations of the parties to this action and upon the court. For the reasons stated, this court is not convinced that the subject order constitutes a permissible exercise of the rule-making authority vested in the Chief Administrator of the Courts.
The regulation of jurisdiction, practice and procedure in the courts is, by constitutional fiat, vested in the Legislature (see NY Const, art VI, § 30; Judiciary Law § 212 [2] [d]; Matter of A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1 [1986]; Matter of Morgenthau v Cooke, 56 NY2d 24 [1982]). However, the Legislature may delegate its authority over practice and procedure to appellate divisions of the supreme court or to the Chief Administrator of the Courts, who can act only with the advice and consent of the Administrative Board of the Courts (see NY Const, art VI, § 30). Reflective of this constitutional scheme is Judiciary Law § 212 (2) (d). In delineating the functions of the Chief Administrator of the Courts, Judiciary Law § 212 (2) (d) contains a mandate that the Chief Administrator “[a]dopt rules and orders regulating practice in the courts as authorized by statute with the advice and consent of the administrative board *632 of the courts, in accordance with the provisions of section thirty of article six of the constitution” (emphasis added). For lack of a better term, the rule-making authority conferred upon the Chief Administrator by section 212 (2) (d) to regulate practice and procedure under statute or other legislative delegation of the type contemplated by article VI, § 30 of the Constitution, has been referred to as “legislative” in nature (see Bloom v Crosson, 183 AD2d 341 [3d Dept 1992], affd 82 NY2d 768 [1993]).
An additional source of rule-making authority is vested in the Chief Administrator by article VI, § 28 of the NY Constitution. Therein, the Chief Judge of the Court of Appeals is vested with exclusive power and authority over the administration of the courts. The Chief Administrator of the Courts is charged with supervising, on behalf of the Chief Judge, the administration and operation of the Unified Court System and he or she may exercise as many of the administrative powers of the Chief Judge as such Chief Judge may delegate to the Chief Administrator (see NY Const, art VI, § 28 [b]). Such a delegation is contained in 22 NYCRR 80.1.
Reflective of this constitutional scheme regarding the administrative powers of the Chief Judge and those of the Chief Administrator by delegation are sections 211 and 212 (1) of the Judiciary Law. Under subdivision (1) (b) of section 211 of the Judiciary Law, the Chief Judge is charged with establishing “standards and administrative policies relating to . . . [t]he adoption, amendment, recission, and implementation of rules and orders regulating practice and procedure in the courts subject to the reserved power of the Legislature provided for in section thirty of article six of the constitution.” Under section 212 (1) of the Judiciary Law, the role of the Chief Administrator is to supervise, on behalf of the Chief Judge, the administration and operation of the Unified Court System and he or she is vested with such powers and duties as may be delegated to him or her by the Chief Judge and those with which the Chief Administrator is charged under the standards and administrative policies of general application throughout the state that are adopted by the Chief Judge in accordance with article VI, § 28 of the Constitution. Pursuant to 22 NYCRR 80.1 (b) (6), the delegated powers of the Chief Administrator also include the power to “adopt administrative rules for the efficient and orderly transaction of business in the trial courts, including but not limited to calendar practice, in consultation with the Administrative Board of the Courts or the appropriate Appel *633 late Divisions” provided that such rules are in accord with the standards and administrative policies established by the Chief Judge pursuant to article VI, § 28 of the Constitution (see Judiciary Law § 212 [1]; 22 NYCRR 80.1 [b]). This type of rule-making authority is administrative in nature, as it is derived from a delegation of the powers of the Chief Judge and is limited to the adoption of administrative rules relating to the efficient and orderly transaction of business in the trial courts (see NY Const, art VI, § 28; Judiciary Law §§ 211, 212 [1]; 22 NYCRR 80.1 [b] [6]).
The authority of the Chief Judge to formulate statewide standards and administrative policies, with the advice and consent of the Administrative Board and the Court of Appeals under article VI, § 28 of the Constitution and Judiciary Law § 211, is viewed as very broad, as it is not subject to the reserved power of the Legislature to regulate practice and procedure in the courts. The adoption of rules and orders regulating the transaction of business by the Chief Administrator under a delegation of the Chief Judge’s administrative authority pursuant to Judiciary Law § 211 (1) and 22 NYCRR 80.1, are likewise viewed as broader than the authority of the Chief Administrator to promulgate rules regulating practice and procedure as authorized by statute or other legislative delegation made pursuant to article VI, § 30 of the Constitution and Judiciary Law § 212 (2) (d) (see Levenson v Lippman, 4 NY3d 280 [2005]; Bloom v Crosson, 183 AD2d 341, supra).
While it has been held that some matters are not subject to the constitutionally conferred power of the Legislature to regulate practice and procedure in the courts because such matters touch upon the inherent nature of the judicial function, rather than the regulation of practice and procedure (see NY Const, art VI, § 30; Riglander v Star Co., 98 App Div 101 [1st Dept 1904], affd 181 NY 531 [1905]), any such inherent power is not unlimited. The courts simply “cannot, under cover of procedure or to accomplish justice in a particular case, invade recognized rights of person and property” (see People v Ramos, 85 NY2d 678, 687 [1995], quoting McQuigan v Delaware, Lackawanna & W. R.R. Co., 129 NY 50, 55 [1891]). The sources of judicial rule-making authority thus do not afford carte blanche to courts in promulgating regulations and no court rule can enlarge or abridge rights conferred by statute (see People v Ramos, 85 NY2d 678, supra; Bloom v Crosson, 183 AD2d 341 [1992], supra). Since rule-making authority cannot significantly *634 affect the legal relationship between litigating parties, the imposition of additional matters that impair statutory remedies or enlarge or abridge rights conferred by statute are not the proper subjects of rules promulgated by court administrators.
Additionally, neither the Legislature nor any other body may limit, impair or circumscribe the constitutional powers of this court to hear and determine cases within its jurisdiction and assigned to it (see People v Correa, 15 NY3d 213 [2010]; Pollicina v Misericordia Hosp. Med. Ctr., 82 NY2d 332 [1993]; People v Fernandez, 72 AD3d 303 [2d Dept 2010]). The general, original jurisdiction of the Supreme Court of the State of New York embodied in all, and enlarged in some, of the six Constitutions of this State encompasses all actions at law and in equity, except those expressly proscribed by the State and Federal Constitutions or other acts entitled to supremacy (see NY Const, art VI, § 7 [a]; Thrasher v United States Liab. Ins. Co., 19 NY2d 159 [1967]). Once a judicial proceeding has commenced, or is in progress, the judge to whom the case has been assigned has the exclusive jurisdiction and authority to adjudicate all issues presented to him or her, including but not limited to, the reception of evidence, the conduct of counsel, instructions to the jury, and the issues raised on motions (see Balogh v H.R.B. Caterers, 88 AD2d 136 [2d Dept 1982]). Judges and justices may not abdicate their adjudicatory responsibilities by deferring to any other, including court administrators. (Id.)
That an action to foreclose a mortgage is within the subject matter jurisdiction of this court is clear. Appellate case authorities have repeatedly held that “[a] plaintiff in an action to foreclose a mortgage establishes its case as a matter of law through production of the mortgage, the unpaid note, and evidence of a default” (Wells Fargo Bank, N.A., 80 AD3d 753, 755 [2011]; Argent Mtge. Co., LLC v Mentesana, 79 AD3d 1079 [2d Dept 2010], supra). The court thus has exclusive jurisdiction to determine, according to governing statutes, the issues raised by the pleadings or by motion, including those for accelerated judgments, which are viewed as trial equivalents, and those raised at the trial of the action, including the adjudication of the sufficiency of proof and the reception of evidence (see Balogh v H.R.B. Caterers, 88 AD2d 136, supra).
The administrative order at issue and the recent amendment of 22 NYCRR 202.12-a, by the addition of subdivision (f), which purports to establish the continuing authority of the Chief Administrative Judge to require the affirmations and affidavits *635 that are the subject of the October 20, 2010 administrative order, are not administrative in nature, as they are not aimed at supervising the administration and operation of the Unified Court System or at the efficient and orderly transaction of business in the trial courts (see Judiciary Law §§ 211, 212 [1]; 22 NYCRR 80.1 [b]). They are, instead, “legislative” in nature, as their provisions purport to regulate practice and procedure in the courts (see NY Const, art VI, § 30; Judiciary Law § 212 [2] [d]). The legislative nature of the administrative order and the enactment of 22 NYCRR 202.12-a (f) are apparent even upon a most cursory review of their terms, as they impose additional, substantive requirements upon a plaintiff seeking the remedy of foreclosure that are not contemplated by the statutes which now regulate foreclosure actions (see RPAPL art 13, CPLR 3408, and L 2009, ch 507, §§ 1, 3, 5, 6, 9, 10, 10-a).
Moreover, to constitute a valid regulation of practice and procedure, a rule of the Chief Administrator of the Courts must arise from an express statutory or other legislative delegation (see NY Const, art VI, § 30; Judiciary Law § 212 [2] [d]). This court can find no legislative delegation to the Chief Administrator by statute or otherwise which empowers the Chief Administrator to impose the substantive requirements that touch upon the nature and sufficiency of proof which the plaintiff must supply to the court in mortgage foreclosure actions. While section 10-a of chapter 507 of the Laws of 2009 contains a delegation of the power of the Legislature to regulate practice and procedure to the Chief Administrator of the Courts by directing her adoption of court rules with respect to certain matters embraced by such law, such delegation was limited to the adoption of such “rules as may be necessary to ensure the just and expeditious processing of all settlement conferences authorized hereunder.” (L 2009, ch 507, § 10-a [1].) The new requirements of both the order and the rule regarding affirmations by counsel confirming the accuracy and trustworthiness of court submissions are unrelated to the settlement conference which was one of the several new procedures imposed by the flurry of recent legislative enactments governing practice and procedure in mortgage foreclosure actions (see L 2008, ch 472, § 3-a; see amendments contained in L 2009, ch 507). Since neither the order nor the rule are the product of any statutory mandate or other legislative delegation in favor of the Chief Administrator and they do not serve to fill a gap in the legislative scheme governing mortgage foreclosure actions, they are void as impermissible *636 invasions into the province of the Legislature (cf Levenson v Lippman, 4 NY3d 280 [2005]; Matter of A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 6, supra).
In addition, the administrative order and the rule at 22 NYCRR 202.12-a (f) significantly affect the legal relationship between the parties to mortgage foreclosure actions that is otherwise fixed by statute. Both impose additional burdens of proof only upon the plaintiff which have the effect of significantly impairing its statutory remedy of foreclosure and sale. They also give defendant mortgagors perceived new grounds for defeating pending claims for foreclosure and sale and/or the vacatur of judgments already granted. These grounds are illusory since they constitute an enlargement of the grounds and proof required for the granting of both judgments and applications to vacate judgments that are expressly provided by statute (see RPAPL 1321; CPLR 3212, 3215, 5015, 317; see also People v Ramos, 85 NY2d 678, supra; Bloom v Crosson, 183 AD2d 341 [1992], supra).
The subject administrative order and the rule at 22 NYCRR 202.12- a (f) also impair the statutory remedy of foreclosure sale afforded to mortgagees by existing statutes. Evidence of such impairment can be found in the recent, vast reduction in case filings and the resounding halt in the prosecution of foreclosure actions pending in this court that immediately followed the adoption of the October 20, 2010 administrative order. Moreover, because that order and the rule at 22 NYCRR 202.12-a (f) affect the nature of evidence to be received and considered by this court, they arguably limit and/or diminish the constitutionally conferred original jurisdiction of this court to hear cases pending before it and to adjudicate the issues raised in accordance with applicable statutory and decisional law. That the constitutional, statutory, traditional and inherent decision-making powers employed by justices of this court in the discharge of their adjudicatory responsibilities may not be diluted nor eviscerated by court administrators is clear (see Balogh v H.R.B. Caterers, 88 AD2d 136, supra). The administrative undertakings of the Chief Administrator of the Courts under examination here have certainly had a chilling effect upon this court’s adjudicatory authority and powers to determine issues raised in pending mortgage foreclosure actions duly assigned to it. For these reasons, this court finds that Administrative Order No. 584-10 and the newly added subdivision (f) to court rule 202.12- a exceed the rule-making authority of the Chief *637 Administrative Judge, in her capacity as Chief Administrator of the Courts.
The defendants’ challenges to the plaintiffs proof as insufficient under CPLR 3212 and 3215 are also without merit. The affidavit of the plaintiff’s agent regarding the defendants’ default in payment under the terms of their $1,300,000 mortgage loan is legally sufficient and comports with the requirements of CPLR 3212. The defendants’ resort to the proof requirements imposed by CPLR 3215 is unavailing since that statute governs motions for default judgments against nonappearing defendants, not motions for summary judgment against answering defendants, which is the relief sought by the plaintiff against the Paces. The defendants’ alternate claims that this motion is premature due to the absence of a settlement conference is incorrect. The court scheduled and held “settlement” conferences in this matter on three dates, the last of which was December 3, 2010, at which, the Pace defendants did not meaningfully participate.
The defendants’ claim that the plaintiff lacks standing to prosecute its claims for foreclosure and sale is also without merit. The plaintiff has demonstrated by proof in admissible form, that it is the owner of the note and mortgage under an assignment of both, executed by Washington Mutual Bank, the original lender, to the plaintiff on April 16, 2008. This action was commenced on April 22, 2008. At the time of the commencement of this action, the plaintiff was the owner of the note and mortgage and, by virtue of such assignment, had standing to commence this action and to prosecute its claims for foreclosure and sale (see U.S. Bank, N.A. v Collymore, 68 AD3d 752 [2d Dept 2009]).
The standing of the plaintiff was thus fixed at the time of commencement. Contrary to the contentions of the defendants, no event occurring subsequent to the commencement of this action would effect a divestiture of the plaintiffs standing (see e.g. CPLR 1018). The defendants’ claims that the plaintiff lacks standing due to circumstances that occurred subsequent to the commencement of this action, concerning, among other things, that the original lender, Washington Mutual Bank, ceased operations and went into receivership, are thus unavailing.
Under these circumstances, the court finds that the Pace defendants failed to rebut the plaintiffs prima facie showing of its entitlement to the summary judgment requested by it. The plaintiff is thus awarded summary judgment dismissing the af *638 firmative defenses and counterclaims asserted in the answer of the Pace defendants and on its complaint against them.
Those portions of the instant motion wherein the plaintiff seeks an order substituting Samantha Pace and/or dropping as party defendants the unknown defendants listed in the caption and an amendment of the caption to reflect same, is granted pursuant to CPLR 1024.
The moving papers further established the default in answering on the part of the remaining defendants, including the newly added defendant identified above, neither of whom served answers to the plaintiffs complaint. Accordingly, the defaults of all such defendants are hereby fixed and determined. Since the plaintiff has been awarded summary judgment against the answering defendants and has established a default in answering by the remaining defendants, the plaintiff is entitled to an order appointing a referee to compute amounts due under the subject note and mortgage (see RPAPL 1321; Vermont Fed. Bank v Chase, 226 AD2d 1034 [3d Dept 1996]; Bank of E. Asia v Smith, 201 AD2d 522 [2d Dept 1994]; Perla v Real Prop. Holdings, LLC, 23 Misc 3d 697 [Sup Ct, Kings County 2009]; HSBC Mtge. Serv., Inc. v Alphonso, 16 Misc 3d 1131[A], 2007 NY Slip Op 51657[U] [Sup Ct, Kings County 2007]).
In view of the foregoing, this motion (No. 003) by the plaintiff for accelerated judgments against the defendants and for an order appointing a referee to compute is granted. The proposed order appointing a referee to compute, as modified by the court, has been signed simultaneously herewith.